Matter of Katz (2025 NY Slip Op 00096)

Matter of Katz

2025 NY Slip Op 00096

Decided on January 8, 2025

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 8, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
VALERIE BRATHWAITE NELSON, JJ.

2020-06842

[*1]In the Matter of Yariv Katz, an attorney and counselor-at-law. Grievance Committee for the Ninth Judicial District, petitioner; Yariv Katz, respondent. (Attorney Registration No. 4714119)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Ninth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on July 29, 2009.

Courtny Osterling, White Plains, NY (Antonia P. Cipollone of counsel), for petitioner.
Yariv Katz, Stamford, Connecticut, respondent pro se.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Ninth Judicial District commenced a formal disciplinary proceeding against the respondent by serving and filing a notice of petition and a verified petition, both dated July 16, 2020. The respondent filed an undated answer, which was received by this Court on September 23, 2020. The respondent's answer, for the most part, was not directly responsive to the petition, but contained comments and explanations with regard to the charged misconduct. The Grievance Committee filed a statement of disputed and undisputed facts, dated October 1, 2020, in which it noted that the respondent did not directly address or deny the factual specifications of the petition charges. Accordingly, the Grievance Committee argued that all of the charges in the petition should be deemed admitted. No reply was submitted by the respondent. By decision and order on application of this Court dated December 10, 2020, the matter was referred to the Honorable Arthur J. Cooperman, as Special Referee, to hear and report. A prehearing conference was conducted on March 5, 2021. On July 27, 2022, the parties entered into a stipulation of facts, in which the respondent essentially admitted to the factual specifications of the petition, and a hearing was conducted on July 28, 2022. In a report dated November 19, 2022, the Special Referee sustained all 18 charges in the petition. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The respondent has submitted no response to the Grievance Committee's motion. In view of the evidence adduced at the hearing, we find that the Special Referee properly sustained charges 4, 6 through 10, 12, and 14 through 18, and those charges are sustained. However, we find that the Special Referee improperly sustained charges 1 through 3, 5, 11, and 13, and those charges are not sustained.
The Petition
The sustained charges in the petition largely involve escrow-related misconduct, related to two attorney escrow accounts at Chase bank on which the respondent was a signatory: the first account ending in 9759 (hereinafter escrow account 9759), and the second account ending in 1448 (hereinafter escrow account 1448).
Charge 4 alleges that the respondent misappropriated client funds in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0). Between September 2017 and April 2019, with regard to three separate matters, the respondent disbursed a total of $42,055.80 [*2]from escrow account 9759 in excess of the funds that he had received for these matters.
Charge 6 alleges that, on September 5, 2018, the respondent withdrew $4,500 in cash from escrow account 9759, and thereby failed to disburse the funds to a named payee, in violation of rule 1.15(e) of the Rules of Professional Conduct.
Charges 7 and 8 allege that the respondent violated rules 1.15(a) and 8.4(h) of the Rules of Professional Conduct based on the same set of facts below. The respondent prepared a joint venture agreement dated November 1, 2015, on behalf of his client, David Zion. The agreement stated that Yair Harari would invest $120,000 toward the renovation of a property located at 61-41 Linden Street in Queens. Pursuant to this agreement, the respondent received two checks totaling $60,000 payable to him, from Contact Realty, a company owned by Harari. These two checks were deposited into escrow account 9759. The checks, both dated November 1, 2015, indicated that they were for "61-41 Linden escrow" and for "escrow 61-41 Linden." In October 2017, the respondent received another check from Contact Realty, in the amount of $70,000, which contained the notation "loan until Nov 1 2017 loan to escrow account only." This check also was deposited into escrow account 9759 on October 2, 2017. On this date, the respondent executed a promissory note referencing the $70,000, which was to be repaid on or before November 1, 2017, and he agreed to personally repay Harari and Contact Realty the total sum of $130,000, which included the previous $60,000 payment. The respondent did not repay the loan.
Charge 9 alleges that the respondent misappropriated client funds in violation of rule 1.15(a) of the Rules of Professional Conduct. The respondent represented Zion in connection with a contract dated May 1, 2014, for the sale of the 61-41 Linden property to Adam Klich. Pursuant to the contract, Klich paid a down payment of $61,000. In December 2014, Klich gave the respondent an additional $60,000 to be paid to Zion as a "finder's fee" for the property. Zion executed the contract of sale on October 16, 2016, even though, unbeknownst to Klich, the property already had been transferred to another entity. As of March 2017, the transaction between Zion and Klich had not closed. By letter dated March 21, 2017, Klich's attorney, Romauld Magda, requested that the $121,000 be returned to his client. The respondent claimed that Zion had permission to use these funds prior to the closing and acknowledged that the respondent already had disbursed the funds. Magda denied giving permission to the respondent to disburse the funds. The respondent returned the funds to Magda in October 2017, approximately three years after first receiving them.
Charge 10 alleges that the respondent misappropriated client funds in violation of rule 1.15(a) of the Rules of Professional Conduct. The respondent deposited $18,900 obtained from his line of credit into escrow account 1448, at a time when the account balance was $0. The respondent then obtained a bank check for $18,900, payable to Attah Francis Nyarko, representing the return of a down payment which had been entrusted to the respondent. The respondent testified that he had "overfunded" money to Zion, which depleted the funds that the respondent was required to hold for Nyarko. The respondent could not identify the account into which the Nyarko funds initially had been deposited.
Charge 12 alleges that the respondent misappropriated client funds in violation of rule 1.15(a) of the Rules of Professional Conduct. The respondent was entrusted with funds related to Theresa Campbell in connection with a real estate transaction. In September and October 2017, the respondent disbursed three checks related to the Campbell matter, totaling $13,600, from escrow account 1448. At the time these disbursements were made, there were no corresponding funds on deposit in escrow account 1448, and the respondent could not provide information regarding the date on which the Campbell funds were deposited, the account into which the funds were deposited, or the amount of funds deposited.
Charge 14 alleges that, on October 23, 2017, the respondent transferred $5,135 from his business account ending in 6622, into escrow account 1448, thereby commingling personal funds with client funds in violation of rule 1.15(a) of the Rules of Professional Conduct.
Charge 15 alleges that, on September 5, 2017, and October 20, 2017, the respondent withdrew the total sum of $4,000 from escrow account 1448, thereby improperly disbursing the funds from an escrow account without naming a payee in violation of rule 1.15(e) of the Rules of Professional Conduct.
Charge 16 alleges that the respondent misappropriated client funds in violation of rule 1.15(a) of the Rules of Professional Conduct. On August 9, 2017, the respondent made a payment to his Visa credit card account in the amount of $11,500 from escrow account 1448. On August 9, 2017, September 5, 2017, and January 4, 2018, the respondent also disbursed more than $800 to a personal account ending in 7001.
Charges 17 and 18 allege that the respondent violated rule 8.4(b) and (h) of the Rules of Professional Conduct based on the same set of facts. The respondent was the subject of a criminal [*3]investigation that involved 10 other defendants, regarding, inter alia, real estate fraud. The respondent pleaded guilty to Penal Law § 165.00(1) (misapplication of property), a class A misdemeanor, and Penal Law § 240.20 (disorderly conduct), a violation. In the respondent's plea allocution, he stated that he knowingly possessed the personal property of another, with the agreement that the property would be returned to its owner, but in fact withheld such property from the owner. The respondent testified that his conviction was with regard to his representation of client Flor Henriquez, who was selling her Bronx real property to Brugal Properties.
The Hearing and Hearing Record
The respondent testified that he had one main escrow account, and approximately six sub-accounts, and that his record-keeping became confusing when he began reusing sub-accounts for subsequent matters. The respondent admitted that he only reconciled the account "[t]o the extent that [he] ha[d] time," which was not on a monthly basis. Although the respondent appeared for four examinations under oath, and was given additional time in which to provide information to the Grievance Committee, he testified that he could not account for the deposits in nine client matters between February 2018 and March 2019, totaling $257,952.69. The respondent failed to identify the source or purpose of these deposits, as well as any corresponding disbursements. The respondent likewise failed to identify the funds against which 17 disbursements were made, between September 2017 and April 2019, totaling $203,913.88.
In relation to charges 7 through 9, the respondent testified that, pursuant to the joint venture agreement between his client Zion and Harari, Harari would provide funds to improve Zion's 61-41 Linden Street property in exchange for a 50% interest in the property. The respondent claimed that he intended to sign the promissory note regarding the $130,000 loaned by Harari to Zion as Zion's agent, rather than personally obligating himself to the repayment of these funds, and that he signed the promissory note under the mistaken belief that Zion would promptly repay the funds. In a June 3, 2019 letter to the Grievance Committee, Harari claimed that he made both the $60,000 and $70,000 loans at the respondent's request, to cover shortfalls in the respondent's escrow account. The records indicate that the respondent used the $70,000 Harari loan, among other funds, to repay Klich a portion of his down payment that the respondent had misappropriated prior to closing. Notwithstanding this evidence, the respondent wrote in his answer that Harari "has used extortion tactics against Respondent to collect several hundred thousand dollars from [Zion]."
The respondent testified that Zion had begun to repay Harari the owed funds, but that repayment was not yet complete. The respondent also stated that he "will never give [Harari] a dollar because [the respondent] did not take any money from him" and that he "did not do anything wrong" with regard to Harari. Throughout the Grievance Committee's investigation, the respondent claimed that he would provide proof that Zion was responsible for the entire $130,000 loan and that Klich gave the respondent permission to disburse his down payment and "finders' fee" prior to closing. No such proof exists in the record. The respondent admitted that he "overfunded" Zion on "more than one occasion," and in doing so, invaded other clients' funds.
With regard to the respondent's criminal conviction, he testified that his misdemeanor plea was conditional, and that upon the completion of his community service, the charge ultimately was dismissed, leaving the respondent with only the disorderly conduct violation. Notwithstanding his guilty plea and allocution, the respondent asserted that he did not "do anything wrong."
The respondent testified in mitigation that during the period of his misconduct, he experienced several personal hardships, including contentious and time-consuming divorce and custody proceedings that lasted more than three years, his arrest in the criminal matter, and his workload which included his legal practice as well as caring for his three children, two of whom have special needs. The respondent averred that these circumstances caused him significant stress and led him to neglect his responsibility to properly maintain his escrow records. The respondent stated that he no longer works with the same individuals who he represented at the time of his misconduct and that he no longer conducts short sales or deed transfers.
The Grievance Committee now moves to confirm the report of the Special Referee and to impose such discipline as this Court deems just and proper. The Grievance Committee reports that the respondent has a disciplinary history consisting of an April 2019 Letter of Advisement (escrow related), a January 2016 Admonition (escrow related), and a July 2013 Letter of Caution (failure to supervise a non-attorney). As noted by the Grievance Committee, the respondent was therefore on notice as early as 2016 that he was not properly fulfilling his fiduciary duties, and yet failed to sufficiently improve his escrow account management. The respondent has not submitted a response to the Grievance Committee's motion.
Findings and Conclusion
In view of the evidence adduced at the hearing, we find that the Special Referee [*4]properly sustained charges 4, 6 through 10, 12, and 14 through 18, and those charges are sustained. However, we find that the Special Referee improperly sustained charges 1 through 3, 5, 11, and 13. Accordingly, that branch of the Grievance Committee's motion which is to confirm so much of the report of the Special Referee as sustained charges 4, 6 through 10, 12, and 14 through 18, is granted. That branch of the Grievance Committee's motion which is to confirm so much of the report of the Special Referee as sustained charges 1 through 3, 5, 11, and 13 is denied, and charges 1 through 3, 5, 11, and 13 are not sustained.
In determining an appropriate measure of discipline, in mitigation we have considered the respondent's challenging personal circumstances at the time of his misconduct, as well as the character evidence submitted and remedial measures taken. However, we have also considered that the respondent misappropriated at least $330,000 over at least two years, some of which was for his personal benefit. He also misrepresented to the Grievance Committee the nature of the Harari loan, claiming that it was for his client Zion, when in fact the respondent used at least $70,000 from the loan to remedy a shortfall in his escrow account. We are likewise troubled by the respondent's failure to identify or account for the receipt and disbursement of more than $460,000 in client funds, demonstrating a lack of cooperation with the Grievance Committee's investigation. Furthermore, on this record, the respondent has failed to repay all of the misappropriated funds. The respondent's failure to account for his clients' funds, his refusal to repay Harari, his contention that he did not personally benefit from his misconduct, and his claim that he did nothing wrong despite pleading guilty to a misdemeanor, among other factors, demonstrate a lack of accountability and remorse for his misconduct. Finally, we have considered the respondent's ongoing disregard for his fiduciary duties, in light of his continued escrow violations following his 2016 Admonition.
Under the totality of the circumstances, we find that disbarment is warranted (see Matter of Lima, 210 AD3d 14; Matter of Barrett, 170 AD3d 69).
LASALLE, P.J., DILLON, DUFFY, BARROS, and BRATHWAITE NELSON, JJ., concur
ORDERED that the branch of the Grievance Committee's motion which is to confirm so much of the Special Referee's report as sustained charges 4, 6 through 10, 12, and 14 through 18, is granted, and those charges are sustained, and that branch of the Grievance Committee's motion which is to confirm so much of the Special Referee's report as sustained charges 1 through 3, 5, 11, and 13 is denied, and those charges are not sustained; and it is further,
ORDERED that the respondent, Yariv Katz, is disbarred, effective immediately, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Yariv Katz, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Yariv Katz, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Yariv Katz, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court